May it please the court, Anthony Colombo on behalf of defendant appellant Hamlet Sardariani. The district court's sentence of 78 months, a sentence 32 months greater than the government was recommending, was both procedurally and substantively unreasonable. Where first, the district court, over defendant's objection, erroneously imposed a two-level upward enhancement for use of an authentication feature. Second, the district court, over both the defendant's and the government's objection, imposed a two-level upward adjustment for sophisticated means. Third, the district court, over, again, the defendant and the government's objection, erred by not adjusting Mr. Sardariani's guideline down two levels for minor role. And then finally, the district court failed to adequately explain and take into account Mr. Sardariani's arguments in mitigation. First, in looking at the erroneous application of a two-level adjustment for, or enhancement for use of an authentication feature pursuant to section 2B1.1B10, subdivision A, subdivision double I. In looking at this, what the district court used to establish this upward enhancement for use of an authentication feature was the forgery of a notary name and notary signature. But in looking at the plain, unambiguous language defining authentication feature pursuant to 18 U.S.C. 1028D, it simply does not fit. In looking at the authentication feature, what 1028D defines it as is there's really four criteria. First, the authentication feature has to be a hologram, watermark, et cetera, some type of security feature that is used by an issuing authority, which is defined in 1028D6 as a government agency. Third is that the authentication feature has to be on an identification document, as defined in 1028D3, as a government-issued identification. And then finally, the identification document or feature, security feature in the identification document issued by a government is to determine whether the document is counterfeit, altered, or otherwise falsified. So when you're looking at the definition of authentication feature, the plain and unambiguous meaning, you're looking at a security feature in a government-issued identification. So, for example, we're talking about a... Counsel, are you familiar with the Blixt case? The Blixt case? Yep, B-L-I-X-T case, Ninth Circuit case, which holds that a signature is an authentication feature. I was going to ask you to distinguish this from that case. Well, I think, Your Honor, in looking at the authentication feature, I think what the statutory language is and what we're looking at is, for example, a hologram on a driver's license, or a watermark on a passport, or a raised seal on a birth certificate or death certificate. That's what the security feature is when you're talking about an authentication feature. In this particular case, that's not what we have here. What we have is a forgery of a notary signature. And that doesn't fit within the definition of authentication feature, and I don't think that the Ninth Circuit precludes it in the Blixt case. I think in looking at the plain language of the authentication feature as defined in 1028d, that it just doesn't fit. The government is trying to, I guess, put a square peg in a round hole in this particular case, and it just doesn't fit within the statutory language. Why doesn't it fit? Well, it doesn't fit, Your Honor, for several reasons. Is that what we have here is we have the use of a forged notary signature, apparently authenticating an individual's signature or identity. What the authentication feature here, it's different, the definition. It's different, but how does it not fit? I mean, it's not a hologram, but this doesn't say hologram. Well, no. What a notary's job is or what a notary does is they are to authenticate an individual's signature. They do not look at the underlying document. They do not look at whether the underlying document is counterfeit, altered, fraudulent. That's all that they're doing. Well, they are, but that's not something that's included under 1028d. If you look at what the definition of authentication feature is, it has to be some security feature, whether it be a holomark, hologram, watermark, et cetera, that is used by a government agency on a government identification to determine. Stop. That's not what a notary seal is all about. Well, I think you need to go one step further when you look at it's to determine if a document is counterfeit, altered, or. Okay. Is the counterfeit altered or otherwise falsified? And that's. If you give me a document with a signature that purports to be authentic, it isn't, why isn't that an altered or falsified document? Well, it's not, Your Honor, under the definition of 1028d. Whose definition? You just read the definition. It says counterfeit, altered, or otherwise falsified. You got a phony signature. That sounds to me like it's otherwise falsified. But the document that the notary public is looking at is not determining whether that underlying document is. It's the signature on the document, which is a critical piece of most documents. And I would, I would distinguish the signature from the security feature. Well, you would, but does the statute? I think it does. Where? I think in 1028d-1. That's what I'm looking at. It's, if you look at the definition, it's a hologram, watermark, certification, symbol, code, image, sequence of numbers, or other feature that either. Okay. Stop right there. That's a broad list. Are you saying a notary signature and seal can't fall within that list? I don't think when you take into the, because you have to look at the other definitions there. How is it not a minimum, a certification, or an other feature? Your Honor, you have to look at the definition of issuing authority, and then. Okay. The problem isn't in the first part of the definition. Let's move. I'm trying to find where the problem is. So it's not there. So what's next? Where is the problem? Well, the issuing authority here, in this particular case, in conjunction with the identification document. So what you have here is it has to be, the security feature has to be issued by a government agency in connection to a government identification. And in this particular case, that's not what we have here. Well, wait a minute. Let's take that in pieces. Is the government involved in this issuing authority? Well, I'm not a notary. I can't do a notary seal. I don't have a notary seal. I happen to have the authority to swear people under oath. But most people aren't. To get that authority, you have to get some authority issued by the government. Now, different States have different procedures, but I think in every State that I know of, the authority of being a notary public is something that you acquire via the government. So why isn't that a government authority? I don't disagree. But then you have to look that it has to be a government-issued identification that this is issued by the authority. So well, first of all, what language are you deriving that from? I'm deriving it from 1028d3 that defines identification document. That's where I'm defining it from. And isn't the authority of a notary public something that's issued by or under the authority of the government? It is. But it's not a government-issued ID, for example. It's not an identification document that is using a security feature such as a hologram. Well, now we're back to the other problem. Because identification document is not the only term in that sequence. It's on an identification document, comma, document-making implement, comma, or means of identification. So you may speak to the definition of identification document. But what about the rest of that sequence? Well, I don't think that it particularly fits, Your Honor. I don't think that was what we're talking about here. As I said, the examples I believe here, we're talking about a raised seal on a birth certificate, a government-issued formal identification. We're talking about holograms on driver's licenses, watermarks on passports. There seems to be an argument aimed at the whole intent of the statute. But I haven't heard an argument that speaks specifically to why a notary seal isn't a means of identification, to determine if a document is counterfeit, altered, or otherwise falsified. Well, because all the notary is doing is saying that this is the individual who signed this document in front of me. It's not attesting to the security feature issued on a government identification to verify whether that underlying document is, in fact, not counterfeit, altered, or otherwise falsified. So I think that there is a distinguishing feature here, Your Honor. So with that, I don't have anything to add. I would move on to then the second issue that I have here, and that's the district court over both the government's and the defendant's objection imposing a two-level upward enhancement for sophisticated means. In this particular case, there was nothing on the part of my client, Hamlet Sardari Ani, that was especially complex or especially intricate in committing the offense, the execution of the offense, or concealment of the offense. What Mr. Sardari Ani, Hamlet Sardari Ani's conduct was, it was all post-funding of these loans from private lenders. He – all of his acts were post-funding. And what we have here is not particularly sophisticated. In fact, the government agreed at sentencing that the information was insufficiently sophisticated. And specifically, the government stated in their sentencing papers, which is the CR 188, that they do not believe that lolling or providing a forged document after the loans were funded or signing a fraudulent deed after the loans were funded were sufficiently sophisticated. What I think we're looking at here is, with sophisticated means, is that the acts have to be so sophisticated to conceal the commission of the offense. And post-funding – What's the authority for that proposition? Well, that comes from Courtney. It's a – it's 238 Fed Third, 815 at 820 and 821. It's a Seventh Circuit case from 2001. And one, it's something that was cited in my briefs, Your Honor. But I think in this particular case, the conduct post-funding by Hamlet Tsardariani wasn't sophisticated. And therefore, in looking at his conduct, sophisticated means should not have been applied in this case. The third error that I think – Are we not able to look to the sophisticated means used by the other co-defendant in order to reach that sophisticated means determination? I think – I think that a district court judge could look at the totality of the circumstances under – and looking at relevant conduct under 1B1.3 and saying that this whole scheme was sophisticated. However, I do think that under the relevant conduct standard, that the defendant should be held responsible for his acts and whether his acts were sophisticated. So – But does the authority support the proposition that we only can look to his acts? No. No. I would concede that that is not the case. However, I would mention that I don't believe that the district court in this particular case made any specific findings in regards to the entirety of the conspiracy. The third factor that I think is in regards to minor role. We have four players here. And both the government and the defense were recommending minor role in this particular case. And we both – both parties agreed at sentencing that in comparison to the other participants in the fraud, and I'm quoting the government's language, the defendant Hamlet Sardariani was indisputably less involved. And there – you have four players here. Henrik Sardariani, who was the mastermind. Chris Woods, who was a career con man who, in regards to the Bith loan, was Henrik's right-hand man and was there every step of the way and actually benefited by $1.9 million. We have Wanda Tenney, who is the escrow officer, who under the government's language was the imprimatur of legitimacy in this case. Without the escrow officer, there was absolutely no way that this would have occurred. And then you have Hamlet Sardariani, who only committed acts post-funding. So I think in this particular case, the failure to impose the role was inappropriate. I would reserve the rest of my time for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court. Ronnie Katzenstein on behalf of the United States. I'll begin with the authentication feature issue, although I don't have much to add because I concur with everything that... Don't trust our questions. Exactly. I would point out that although counsel continues to insist that the authentication feature has to appear on a government-issued document, that is not what is required under the plain language of 1028D, which allows for the enhancement or defines an authentication feature or certification that attests to the genuineness of a means of identification, which is under this Court's precedent, a signature qualifies as that. There is no requirement that the document on which the means of identification appears be a government-issued document. We know that means of identification is defined differently than identification document under the statute. 1028D-3 defines identification document as a government-issued document, but means of identification is defined under 1028D-7, and the structure of that definition shows how very, very broad that definition is. It begins in the subsection, I believe it's subsection A, with government-issued documents, but then expands to include biometric data, privately issued identification items like sequences of numbers, for instance, bank accounts and things like that. So it's clear under the plain language of the definition that the notary seal, which attests to the genuineness of a signature, is a feature issued by an authorized authority, namely the state, which regulates notaries, issues their commissions, and relies on notaries for purposes of determining whether or not documents can be recorded. I would stay stepping back again in the sense that I believe Judge Clifton was indicating, or was discussing with counsel, the whole nature of this enhancement is to address procedures that are in place to guarantee that documents are, identification documents and means of identification are authentic. Here the state has a system in place to guarantee that signatures on deeds and deeds that are recorded in the property records of the state are accurate and true, and the state has a clear interest in that, to be able to assess property taxes properly, to be able to determine who has obligations to comply with regulations for property. What the defendants in this case did was precisely to sabotage the safeguards which are established by the state to ensure the accuracy of property records. They sabotaged those safeguards by forging the notary's signatures, the whole notarization process, and thereby were able to accomplish their fraud. Again, in the lower court, defendant did not ever object that this was not an authentication feature, that forged notary seals were not authentication features. His only objection was that he was not engaged in actually creating the forged notarizations. And in view of that, even if it were error, which I don't believe it is for the plain meaning of the statute, the enhancement would apply anyway, because the defendant used or the conspiracy used the names, the commission members, and the notarization stamps to create notarized documents as part of their fraud. Let me turn, then, to the question of the other enhancements that were applied here, and I'll start with the sophisticated means enhancement. What defense counsel has argued today is that we should just, this Court should just look at the conduct of the defendant himself, although I believe he conceded with Judge Dorsey's question that under the case law and under the precedence of this Court and the relevant conduct guidelines that you can look at all of the conduct of the conspiracy, which was reasonably foreseeable to him. And I would point out in that regard that in defendant's own plea agreement, he indicated, he stated in the plea agreement, in the factual basis, that he, that these acts in the full scope of the conspiracy were either known or reasonable or reasonably foreseeable to him. He also, defense counsel also indicates that the government below took the position in compliance with our obligations under the plea agreement that sophisticated means did not apply. It is true that the government below took the, we viewed the conduct of defendant, we took the position that this defendant, Hamlet Sardariani, was less culpable than his co-defendant, Henrik Sardariani. We took that position below, we continue to maintain that here. But the issue before this Court, of course, is whether or not the district court's decision, the district court's view of the facts, which the district court did and here the district court relied on a larger universe of facts than the ones on which the government focused below. The court looked at, in addition to the facts which the government addressed in its own pleadings, looked at the fact that the offense conduct involved a sham entity, FCHM, which was used to hold one of the properties that was used to collateralize to allegedly collateralize the loans, that a sham property was used. The district court also looked to the fact that the defendant concealed his receipt of income from SLK, the company that was used to perpetrate the fraud. So the district court was looking at a larger universe of facts. The district court also made an explicit finding that there was more involved here than just post-funding conduct by this particular defendant. In fact, the district court, it's at excerpts of Record 32, the district court said, made an explicit finding that this defendant, Hamlet, was engaged in making a BIF loan before the loan funded, and those misreps were integral and essential to the fraud because they gave the principle of BIF an understanding as to why they bolstered the story as to why the $2.5 million loan was necessary. With respect to minor role, again, below the government took the position and the facts were that he was less culpable than his co-defendant, his older brother, Henrik Sardariani. But the district court, again, made an independent assessment as it was. Well, did the district court disagree as to that element, as between those two? With respect to that, the district court acknowledged that he was less culpable, although the district court did say explicitly that there was more involved with respect to Hamlet Sardari than just an outgrowth of his trust in his brother. And that was a finding that she made at ER 32 and 33. But she also, the district court also appropriately determined, made an independent determination that notwithstanding the fact that the two defendants had different levels of culpability and that Hamlet was less culpable, she determined that that was not sufficient to show that he was substantially less culpable than the average defendant committing that crime and that, therefore, a minor role adjustment wasn't appropriate. She didn't enhance his sentence. She didn't make any upward enhancement based on role, but she found that a reduction in his offense level was not appropriate. Those were all factual findings that were amply supported by the record as we've set out in our brief. The court doesn't have any further questions with respect to any of the issues. Thank you. You have 39 seconds, but we'll give you an extra two minutes. I'll try to use it wisely, Your Honor. Under the plea agreement, the government is required to maintain its view that the calculations in the plea agreement are consistent with the facts of the case. The fact, the government did not recommend sophisticated means, nor did they, and they agreed that minor role was appropriate, because, in fact, both of those were justified in this particular case. Counsel just read to us a number of comments by the district court during the sentencing with respect to the sophisticated means and the culpability issue. How were those insufficient to support these conclusions? Well, in regards to any prefunding conduct, okay, there was only one thing that was alleged by the victim in regards to the Bith loan, Mr. Zohrani, where he said several years later, three, four, five years later, after the fact, that he had spoken to my client and my client reassured him that his brother would pay the loan and that my client's brother was, in fact, gainfully employed, et cetera. But you have to look at it, and the district court completely ignored the defenses pointing out that Mr. Zohrani, only a few days after this loan had been funded, prepared a five-page declaration supported by Exhibits A through R, never mentioning anything about Hamlet and his contact with Hamlet prefunding. In addition to that, there were three subsequent interviews by the FBI where Mr. Zohrani never mentions anything prefunding contact with Hamlet Sardariani. The only time this comes up is several years later during a civil deposition where Mr. Zohrani now says, Hamlet said this to me. So I think that there are facts inconsistent with that, as I pointed out. And within the plea agreement, there was nothing prefunding admitted to by Mr. Sardariani, and he adamantly has maintained throughout the proceedings anything that he did was prefunding, and that was distributing, basically distributing the loan proceeds that had been received by Mr. Sardariani. And looking at this case as a whole, given the mitigating circumstances that were set forth by Mr. Sardariani at sentencing, given that the reasonable in this case, both procedurally and substantively. And I think you have to look at, Henrik Sardariani received 120 months, my client received 78 months, Chris Woods received 48 months, who did receive 1.9 million of the proceeds, and Wanda Tenney, the escrow officer, who this could not have actually gone forward, she made this possible, received the probationary sentence. So under all of the circumstances, I think that the district court's sentence should be remanded for resentencing, consistent with the arguments made today, and I will submit on those comments. Thank you for giving me additional time. Thank you, counsel. The case is argued and will be submitted.
judges: Dorsey, Reinhardt, Clifton